Mr. Schwimmer, right? Yes, Your Honor. Good morning. May it please the Court. Robert Schwimmer on behalf of Appellant Timothy Lee Ward. I'd like to reserve three minutes for rebuttal, please. Yeah. This case before you on appeal from summary judgment of this report, and really it hinges on the veracity of a report by Sergeant Carr citing confidential informants claiming that Mr. Ward made threats against her. Now, notably, Sergeant Carr had a history in the record of animus towards Mr. Ward. Based upon what evidence other than the declaration of your client? That would be the only evidence, Your Honor. As a matter of fact, in this case it seems like the only evidence on any element of this is the declaration of your client. That's correct. So in a summary judgment situation when there's no corroborative evidence about the impact of this action or retaliation, depending on what you're talking about here, is that sufficient to permit this to go back to the district court? It is, Your Honor. This is really a he said, she said situation. What we have is we have a case. Well, it's more than that, isn't it? I mean, you've got a situation where he claims that, for example, he was treated differently than other people. There's no evidence of that at all. Quite the contrary. Well, if we look at this through the class of one framework, Your Honor, where there is evidence in the record from which a reasonable jury could conclude that Sergeant Carr fabricated her allegation against him, against Mr. Ward, we have Well, let's just say hypothetically that that's correct. Okay. In what way was your client injured? My By being removed to the other facility. Was he deprived of showers, exercise and other things that other people got and he didn't get? He was. He does claim to have been deprived of some of those things, not Compared to the other people, though, I'm saying. Compared to the other, yes. Compared to what he should have gotten in his cell block and what he did get in his cell block.  Apples and apples here. From my reading, it seemed like even if you accepted your client's statement as being 100% accurate, the reality is that under Mecham, transfers don't trigger due process rights. You look at the evidence of inadequate health care, he got exactly the same health care treatment that everybody else in the cell block got. Did I misunderstand that? Well, I guess the question is if we're looking at it under the due process analysis or the equal protection analysis, and if we're looking at it under the equal protection analysis, the footnote 11 from Sandin says that despite the Mecham and Sandin analysis, there are still these equal protection rights outside of that, that there are other constitutional rights. So I understand your client is alleged that he is homosexual. Does there any evidence that anybody else knew he was homosexual or that he claimed to be homosexual? Well, I mean, there's his evidence. Other than his affidavit. No, Your Honor. There isn't other evidence. I'd like to ask you a question. You say that he was transferred to another part of the prison where gays were badly treated. And all I could find supporting that was a statement he made in conversation with the guard where he said, you're transferring me to a place where gays are badly treated. It wasn't — it was just a conversational remark to her. Is there other support for that statement? No, Your Honor. There isn't. You know, this case, you know, some of the factors were not presented as they might have been. But that's the problem we have to wrestle with, isn't it? I mean, the reality is — I mean, I'm not questioning the veracity of your client. I mean, your client made his declaration. But that seems to be all there is. In every case, every claim he makes, there's no corroborative evidence. And the evidence that is put in suggests that he's treated exactly like everybody else and that the response that the officer made based upon the alleged threat was one that everybody agrees that had it not been done, there would have been a culpability on the part of that officer for failure to act. So I'm just looking for — we're talking about summary judgment here. Your client's entitled to certain presumptions, but it just seems like all we've got is his declaration. Well, we have his declaration. We have — I mean, if we go back to the assumption that there's evidence in the record — that there's evidence in the record that Sergeant Carr fabricated these allegations. And what's that evidence? Well, so we have his statement that he never made threats. We have no evidence in the record of any threats. All we have is the evidence. But again, it's under your client's declaration. That is the sum and substance of everything. That's correct. But that's true on the other side as well. You've got several people there testifying. And in no instance that I saw do you have other people agreeing in any way with what your client has alleged. Well, we have Sergeant Carr, who is the only one on the record who's saying that she received these threats from the confidential informants. We have the prison investigative service that said not to press charges based on insufficient evidence of those threats. We have Mr. Ward claiming that she did not follow proper procedures regarding And they immediately corrected that once that determination was made, right? Well, so once the determination was made as far as his reclassification, which came later, and that was related to the warden, after the fact, after the prison investigative service had concluded that there was not sufficient evidence to press criminal charges, he still put him up for reclassification. He was reclassified improperly because when you use confidential informants confidential information, they are required to go through certain steps to ensure that those, that that information is valid. That wasn't followed. Again, I think that that could be evidence to a jury that perhaps there were no informants or that these informants were not reliable. And then, again, when it's You're saying that we need to decide this case based upon possibilities and inferences and speculation. I believe that those are, those are inferences and those are inferences that the jury, a reasonable jury could make in this case. But the whole purpose of a summary judgment is to dispose of, as a matter of fact, I think about 90 percent of our civil matters today are disposed of either by 12b6s or summary judgments. And they don't get to a jury because there's not adequate material disputes about the evidence. And here we're talking about, is there a dispute respecting material evidence? And everything seems, again, to come back to your client and nothing seems to be corroborated. Well, but that's true on the other side as well, Your Honor. And, I mean, that's the role of a jury. The jury is here to decide facts. And where my client has sufficient circumstantial evidence to show that these threats were never made, that would allow a jury to conclude that he was basically, that he was targeted. And regardless of the reason for that, if those threats were in fact made up, that would be a violation of equal protection. Well, your argument is, as I understand it, there are material facts in dispute over issues that would keep summary judgment from properly being entered. Correct. And you're arguing, do you have those facts? I think that your strongest argument is the one that was in equal protection. Now, it was surprising to me how equal protection got in. I want to phrase this question as best I can to get your position on it. Equal protection did not come up after our court saw the case the first time. We remanded it back to the district court. But it was on all other equal grounds. And that was specific in our ruling. Then I read what the district court did. And she decided that there was enough facts for equal protection. So she writes equal protection issues but finds that there's against you on the issue. My question to you is, did she have power to make that determination? That is, when this court sends back a case saying that these are the issues and we want you to do X, can she then do another issue? You see what I mean? Have we given, through our remand, have we given her power to do certain things? And if she does something different, it's without power. I'm trying to find out, is this issue really before us? Well, maybe I'm misunderstanding. You know, when this court remanded, it was on dismissal upon screening. Yes. And so after that time, my client amended his complaint. And so that was the complaint that went forward. And it went, you know, the district court, I believe, chose not to dismiss the equal protection claim. And then it went forward to summary judgment. Yes. Now, did she have power to do that? That is, when we send it back, did we send it back for him to file another complaint? You know, Your Honor, I'm not sure on the record. Yeah. I'm not sure either. And the issue didn't come up. It's probably unfair to ask you. But the thought, as I read the record, the thought came up to me of was this one of those issues in which we remand to the district court for a certain purpose? It requires the district court not to go outside our remand. Or was it more general than that? And I think you'd take the position it's more general than that, because at the beginning of the case where it's involving a screening order. Correct. Yeah. I mean, that was his first complaint. He didn't have any opportunity to amend before that. Okay. I just wanted to raise the issue and give the government an opportunity to tell why you're wrong. Okay. Well, we may give you a minute to respond, but we're past the time. So let's now hear from the government. Are you all dividing up time, or you'll let us know? Yes. Good morning, Your Honors. May it please the Court. Michelle Forney from the Arizona Attorney General's Office on behalf of Defendant Sergeant Carr. And I'd like to reserve as much time as possible for our co-defendant. It's up to you. We were going to try to split it 50-50, but depending on your questions. Fine. First, as to your question about the remand, I did find the order. It's in Volume 3 of the Excerpts of Record, and it's Document 57, is this Court's mandate. And this Court remanded the case first to determine whether or not there was a retaliation claim under the recent case decision in Austin v. Terhune that came out after the previous appeal. And then it does not look like it gave the district court discretion to allow a second amended complaint or to revive new claims. And I wish I had made that argument, but I haven't briefed it, and I don't know whether or not the Court could have allowed Mr. Ward to file a second amended complaint and make his equal protection claim. Well, it's an issue that's alive because it deals with our jurisdiction. Yes. And I just wanted to get your view on it. Well, I wish I had made that argument. I'd also like to address what counsel said about the evidence in the record that there is simply no evidence that she fabricated her report. Instead, what we have is the CIU Criminal Investigation Unit's investigation where they interviewed Sergeant Carr. She talked about the use of these confidential informants for four years prior to this incident. So there was documentation about those confidential informants having been used in the past. That's not something we were going to disclose to Mr. Ward because of issues of prison security and confidentiality. He doesn't have the entitlement to have. No. You know what bothers me about the case, and I have made up my mind on it so I can let you know. What bothers me about this case is, is there a material fact about discrimination against Mr. Carr or to the defendant by Sergeant Carr based upon his sexual orientation? And it doesn't have to prove it by a summary judgment, but a summary judgment can't be granted if there's a material fact that a fact finder should take evidence on it. Here you have a situation where there's a smoking gun. At least the jury or the judge could believe there's a smoking gun. I do not like gays. And then there's a series of things that happen which you can have a reason for but also could be done because she does not like gays. For example, she made the decision that it was not the cellmate who was actually involved in this effort to make money, but the person who is openly gay who gets transferred to this other field. And then there's these other issues that come up. Maybe there, maybe he did make a threat. He claims he didn't. There may be a factual determination there. And my question to you is, why is there not sufficient facts in the record to show a material fact that he's entitled to have before a judge or a jury, that is at least on equal protection that it should go on to a trial? Well, I think from the standpoint of looking at the whole picture, Sergeant Carr had very little control over anything. Even if you assume that she lied and submitted this report, there were sufficient processes throughout this that protected Mr. Ward. He was allowed to speak to this criminal investigative unit. She did not make the decision to transfer him to the detention center. She reported to her supervisor, hey, I've gotten a threat. Somebody, this inmate has threatened to stab me. And then her policy, they were separated. She had no understanding or no control over whether or not they would believe her or whether or not thanks to her discipline. Did she have control over the first transfer? No, she did not. From her declaration, which is in the record, she contacted the count movement officer and said these two inmates should probably be separated. And the count movement officer then starts looking for available beds. Even once the count movement officer would find beds, that doesn't assure the transfer's going to happen. Who decided who would be transferred? There's a deputy warden or the warden and the classification department all gets involved. Make the decision. But did Sergeant Carr make a recommendation? She made the recommendation that they should be separated. She did not make a recommendation that Mr. Ward should be moved versus the cellmate. Either one of them could have been moved. Or even out of the same facility, right? Exactly. I guess that's what I struggle with. If you take Judge Wallace's point that you have an uncorroborated but nonetheless non-disputed statement by Mr. Ward that he was homosexual and yet nothing happened as a result of that that seems to be treating people differently, contrary to prison policy or contrary to law. If that happened, it's kind of like a distinction without a difference. You've got an alleged event but no damages. Nothing flowed from that. Is that in and of itself sufficient to warrant the judges handing down a summary judgment? Yes. That's our position in this case. And I'd like to make one more point and then I'll defer to my co-defendant. And that is she was not found guilty of fabricating the report. The criminal investigation unit is similar to a prosecuting attorney or county sheriff's office or whatever. They're just doing an investigation to determine whether or not to press charges outside and perhaps increase his sentence, give him a new sentence, or to give him disciplinary violations within the prison such as loss of privileges and that. And all they found here was that there was not sufficient evidence to go further, not that he had been falsely accused. Okay. Thank you. Good morning, Your Honors. My name is Scott Zerlot. I represent Robert Stewart. He was the former deputy warden. And if it pleases the Court, I would just like to address one issue a bit more forcefully than I addressed it in my answering brief. And that deals with Mr. Ward's argument that the criminal investigation unit, the CIU unit, somehow exonerated him of the accusation that he had threatened Sergeant Carr and the other officer. And that's not borne out by the record. The record shows, and I refer to the CIU supplemental report, which is in volume three of Sergeant Carr's excerpts of the record at page 100 and cited by Mr. Ward in the record as 160-2 at page 27. That report simply shows that the criminal investigation unit investigator decided not to press criminal charges. It didn't say that he determined that the charges were unfounded, that there was no evidence for it. In fact, it suggests the reason why he didn't press charges is because Mr. Ward was sufficiently contrite in his mind. And that's significant because this purported disregard of the criminal investigation unit's findings by Deputy Warden Stewart when he recommended the reclassification is the linchpin of the claim against Deputy Warden Stewart. And that's mixing apples and oranges anyways. We're dealing with a criminal claim where the criminal investigators decided there wasn't sufficient evidence or, excuse me, decided that they didn't need to press criminal charges for whatever reason. Even if they decided there wasn't sufficient evidence, that's based on a different burden of proof. They had to prove his criminal responsibility beyond reasonable doubt, whereas Deputy Warden Stewart simply had to address this in an administrative context where he decides that he's going to recommend Mr. Ward for reclassification to a more regimented or strict security classification. And that's apples and oranges. And the record is clear that Mr. Ward received adequate due process in that process, and the record is devoid of any evidence that Deputy Warden Stewart was aware of his sexual orientation, and it certainly is devoid of any evidence that motivated him in any way. Thank you. Thank you, both. And I'll give you a minute to respond, if you like. First, Judge Smith, to your point about any damages, anything like that. I think that if you look at Village of Willowbrook, where you have a case where the village actually went back and ultimately changed their mind and said, okay, you know, initially we wanted a 33-foot easement. Now we want a 15-foot easement because, you know, you're complaining and whatever else. I mean, you still have damages in that case. And whether it's nominal damages or something else, you know, the fact that ---- Perhaps I didn't state it properly. When I said damages, what I was talking about, that there's no evidence of actions that were taken as a result of the claims your client made that appear to be unlawful. I mean, obviously, damages would flow to your client were they unlawful. But my point was, for example, on the due process point, you've got Mecham that directly says that there are no due process rights in connection with inter-building transfers. They just aren't. That's what the law is. So as you go to each one of these points, I'm having difficulty understanding in what way either Mr. Carr, Mr. Stewart, or the people at the prison acted in an unlawful way or in a disparate way as amongst the prisoners as a result of what your client alleged. I think that even where you don't have a due process right, you can still have an equal protection violation if, you know, if the prison policies are used in a way to intentionally discriminate against you, potentially in a discriminatory manner. I understand. But again, I'm having difficulty understanding in what way he was discriminated against. In order to be in equal protection, you have to show that you were treated differently from somebody else that was, you know, different or similarly situated. And in this case, he says, you know, I'm a homosexual, and these things happened to me. And you look at each of the things that happened, and in each instance, it appears that either our case law directly says it doesn't – there's no cause of action there, or that he wasn't treated differently than anybody else. That's what I'm struggling with. I guess he – to the extent that the allegations are fabricated, he's being treated differently than prisoners who do nothing wrong, you know, where he gets sent to administrative detention and then ultimately reclassified based on these allegations, which, you know, we posit there's evidence in the record that they were fabricated. This wouldn't have happened to him absent that. Okay. All right. Well, thank you very much for your arguments, all three of you. Counsel, you're a pro bono appointee, I take it. Yes, Your Honor. We want to thank you on behalf of the Court. The lawyers in this Circuit have been amazing at coming forward and helping out in cases in which we think pro ses need representation so we can understand cases better. You did a very fine job, and I'm sure it was a great experience for you. It was. Thank you. And thank you very much for your time. And congratulations on carrying out the responsibilities of a lawyer at the highest level. Thank you very much, Your Honor. Indeed. We all share that. And the case of Ward v. Carr is submitted.
judges: Wallace, Noonan, Smith